**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| ANDY MOORE<br>VERNIESE BROWN,<br><br>*Plaintiffs,*<br><br>v.<br><br>KAISER PERMANENTE, aka KAISER PERMANENTE INSURANCE COMPANY, et al.,<br><br>*Defendants.* | CA No. 1:25-cv-1996 |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT MID-ATLANTIC PERMANENTE MEDICAL GROUP, P.C. AND THUY-ANN MELVIN, M.D.'S MOTION TO DISMISS COUNT II OF THE SECOND AMENDED COMPLAINT**

## I. INTRODUCTION

Defendants Mid-Atlantic Permanente Medical Group, P.C. ("MAPMG") and Thuy-Ann Melvin, M.D. ("Dr. Melvin") ask this Court to dismiss, a second time, Plaintiff Andy Moore's claim that MAPMG retaliated against him for asserting race discrimination claims by reporting to three state medical boards and the National Practitioner Data Bank ("NPDB") that he was "terminated" for quality-of-care reasons — after MAPMG had already accepted his resignation, and after MAPMG knew he had retained counsel and asserted claims of race discrimination. Defendants' Motion recycles the same two theories rejected, in substance, when this Court granted Plaintiff leave to amend: (1) that the reports are shielded by statutory immunity because they were,

in Defendants' view, accurate and mandatory; and (2) that the Second Amended Complaint ("SAC") fails to plead the elements of a § 1981 retaliation claim.

Neither argument withstands scrutiny at the pleading stage. Statutory reporting immunity is not a license to characterize a physician's separation in the most damaging terms available; it protects good-faith, non-malicious reporting, and whether MAPMG's chosen characterization — that Dr. Moore was "terminated … in connection with concerns about quality of care," reported to the NPDB as an involuntary separation tied to substandard care — was made in good faith is a factual question that cannot be resolved on a motion to dismiss. And the SAC plausibly alleges every element of a retaliation claim: protected activity (Dr. Moore's pre-resignation assertion of race discrimination claims through counsel), Defendants' actual knowledge of that activity, a materially adverse action (the post-Release reports themselves), and a causal connection supported by temporal proximity, the falsity of the characterization chosen, and a similarly situated comparator who was not in Plaintiff's protected class and who received no comparable adverse report. SAC ¶¶ 110–123, 130–137. The Motion should be denied.

## II. STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint, not the ultimate merits of the claim. *See* Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The Court must accept all well-pleaded factual allegations as true and construe them in the light most favorable to the plaintiff. Edwards v. City of Goldsboro, 178 F.3d 231, 244, §IV (4th Cir. 1999). A complaint need only allege "enough facts to state a claim to relief that is plausible on its face," Twombly, 550 U.S. at 570, and "plausibility" is not "probability" — it requires only "more than a sheer possibility that a defendant has acted

unlawfully." Iqbal, 556 U.S. at 678. At the pleading stage, a plaintiff alleging retaliation is not required to establish a prima facie case or to plead evidentiary detail sufficient to survive summary judgment; the ordinary rules of notice pleading apply. See **Swierkiewicz v. Sorema N.A.**, 534 U.S. 506, 511–12 (2002) (employment discrimination complaint need not plead a prima facie case to survive a motion to dismiss; "petitioner's complaint easily satisfies the requirements of Rule 8(a) because it gives respondent fair notice of the basis for petitioner's claims. Petitioner alleged that he had been terminated on account of his national origin in violation of Title VII and on account of his age in violation of the ADEA.").

Where a defendant attaches or relies upon an exhibit in support of a motion to dismiss, that exhibit may be considered only if it is integral to the complaint and its authenticity is not disputed, and even then, the exhibit controls over conflicting allegations only where an actual, irreconcilable conflict exists. Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 166–67 ("But in cases where the plaintiff attaches or incorporates a document for purposes other than the truthfulness of the document, it is inappropriate to treat the contents of that document as true.")(4th Cir. 2016). Goines does not permit a court to resolve genuine factual disputes about a document's meaning, materiality, or the good faith of the party who authored it in the defendant's favor at the pleading stage; it applies only where the exhibit's contents flatly contradict the complaint's allegations of fact, not where the parties dispute the legal significance or characterization of an undisputed document. See Id. at 167.

## III. STATEMENT OF RELEVANT FACTS

Dr. Moore was employed as an Advanced Urgent Care Physician placed by MAPMG at Kaiser facilities in Northern Virginia from January 2023 until his resignation in September 2024. SAC ¶¶ 1, 7. Following the death of a pediatric patient on August 16, 2024, Dr. Moore was

suspended within an hour, never interviewed by the decisionmakers, and ultimately presented on September 13, 2024, with an ultimatum: resign or be terminated for cause by October 4, 2024. SAC ¶¶ 13–19, 26, 74–77, 110. That ultimatum came notwithstanding a peer-review process later shown to have relied on scores a senior physician did not agree with, SAC ¶¶ 20–25, 89–92, and notwithstanding the later-discovered fact that the child's death resulted from a previously undiagnosed genetic mutation and unrelated medical factors, not from any deficiency in Dr. Moore's care. SAC ¶¶ 86–88, 90.

On September 27, 2024 — the Friday before his resign-or-be-terminated deadline — Dr. Moore, through counsel, sent MAPMG and Kaiser leadership a letter asserting his race discrimination claims and putting Defendants on notice that he considered his separation a constructive discharge. SAC ¶ 112. That letter is the protected activity underlying Count II: Dr. Moore "engaged in activity protected under 42 U.S.C. § 1981 when, through counsel, he advised MAPMG and Kaiser leadership of his race discrimination claims prior to his resignation." SAC ¶ 132. MAPMG and Dr. Melvin do not dispute that they received this letter; the SAC alleges they had actual knowledge of it at the time of the conduct described below. SAC ¶¶ 113, 118, 133.

On October 1, 2024, Dr. Moore signed a separation agreement that had been sent directly to him rather than to his counsel; when he realized it purported to release MAPMG from all claims, his counsel immediately notified MAPMG that the release was withdrawn. SAC ¶¶ 114–115. Notwithstanding the resignation (ignoring the withdrawal thereof), MAPMG proceeded to report Dr. Moore's separation to the state medical boards of Virginia, Maryland, and the District of Columbia, and to the NPDB. SAC ¶ 116. On October 10, 2024, Dr. Melvin, acting as an authorized agent of MAPMG, wrote to those boards stating that Dr. Moore was "terminated … in connection with concerns about quality of care being provided to patients." SAC ¶ 117. The corresponding

NPDB report went further still, characterizing the separation as an involuntary action premised on substandard care — a materially more damaging characterization than either "resigned" or the language used in the state board letters.

The SAC alleges that MAPMG did not treat similarly situated physicians outside Dr. Moore's protected class the same way. Dr. Karimi Lalani, who is of Indian descent and therefore not within Plaintiff's protected class, was investigated for patient care issues, placed on probation, interviewed and permitted to tell her side of the story, and eventually terminated for cause — yet was never reported to any medical board or to the NPDB. SAC ¶¶ 104, 119, 135. Unlike Dr. Lalani, Dr. Moore was never interviewed, was not permitted probation, and was reported to four separate bodies in terms more damaging than the truth. SAC ¶¶ 18, 63–65, 74, 116–120.

The SAC alleges that the timing and substance of MAPMG's reporting — occurring only after Dr. Moore retained counsel, asserted his discrimination claims, and executed (and then withdrew) a release, and only after MAPMG had accepted the benefit of the resignation it had procured — support the inference that the reporting was retaliatory. SAC ¶¶ 118, 122, 136. As a direct result, Dr. Moore has suffered and continues to suffer damage to his professional reputation, licensure standing, and ability to obtain future employment, hospital privileges, and professional liability insurance. SAC ¶¶ 120, 137.

## IV. ARGUMENT

### A. The Second Amended Complaint Plausibly Alleges Every Element of a Retaliation Claim Under 42 U.S.C. § 1981.

Section 1981 encompasses retaliation claims by an individual who has complained about a violation of another person's contract-related "rights," and by extension protects from retaliation an individual, like Dr. Moore, who complains of race discrimination affecting his own employment

relationship. CBOCS West, Inc. v. Humphries, 553 U.S. 442, 446, 457 (2008). To plead retaliation under § 1981, a plaintiff must plausibly allege that (1) he engaged in protected activity; (2) the defendant took a materially adverse action against him; and (3) a causal connection existed between the two. See Boyer-Liberto v. Fontainebleau Corp., 786 F.3d 264, 281 (4th Cir. 2015) (en banc). Each element is plausibly pled here.

**1. Protected Activity**

The SAC alleges that Dr. Moore, through counsel, advised MAPMG and Kaiser leadership of his race discrimination claims before his resignation became effective and put Defendants on notice that he viewed his separation as a race-based constructive discharge. SAC ¶¶ 112–113, 132. An employee's assertion — whether formal or informal, and whether made directly or through counsel — that he believes he has been subjected to race discrimination is quintessential protected activity. See Boyer-Liberto, 786 F.3d at 282 (protected activity includes staff complaints of race discrimination raised outside a formal grievance process). Defendants' suggestion that a pre-litigation letter through counsel is insufficient to constitute protected activity would require this Court to hold that the manner and formality of a complaint, rather than its substance, determines whether § 1981's retaliation protections apply — a position unsupported by the statute or its purpose.

**2. Defendants' Knowledge of the Protected Activity**

The SAC alleges that MAPMG and Dr. Melvin had actual knowledge of Dr. Moore's protected activity — they received the September 27, 2024, letter through counsel — before the October 10, 2024, reports were made. SAC ¶¶ 112, 118, 133. Defendants do not, and cannot, dispute that they received correspondence from Dr. Moore's counsel; their argument is instead that

the letter's content did not sufficiently specify race discrimination by MAPMG. That argument mistakes the specificity required of a complaint's allegations for the specificity required of the underlying protected activity itself. The SAC alleges, and at this stage the Court must accept, that the letter asserted race discrimination claims and framed the separation as a constructive discharge grounded in that discrimination. SAC ¶ 112. Whether the letter used particular statutory language is not a pleading requirement; it is, at most, a factual dispute about the letter's content that is not resolvable by looking past the complaint's allegations at the pleading stage.

**3. Materially Adverse Action**

A materially adverse action is one that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006) (internal quotation marks omitted). The standard is objective and context-specific and is judged from the perspective of a reasonable person in the plaintiff's position — here, a physician whose livelihood depends on licensure, hospital privileges, and malpractice insurability. Id. at 69–71.

Reporting a physician to state medical boards and the NPDB in terms falsely suggesting termination for cause related to patient-care deficiencies, rather than the resignation - an outcome MAPMG *had itself procured*, is precisely the sort of action that would dissuade a reasonable physician from asserting discrimination claims. The SAC alleges that the NPDB report went beyond even the state board letters, characterizing Dr. Moore's separation as an involuntary action with a stated basis of substandard care — a report that carries direct, foreseeable consequences for licensure, privileging, and insurability far more severe than a report that a physician simply resigned. SAC ¶¶ 116–120, 134. Defendants' position that this reporting was merely "accurate" restates their merits defense; it does not defeat the plausibility of Plaintiff's allegation that the

characterization chosen was materially more damaging than the truth and was calculated to be so which was discriminatory / in retaliation for his engaging in protected activity.

**4. Causal Connection**

Causation may be shown through temporal proximity between the protected activity and the adverse action, particularly where that proximity is reinforced by other circumstantial evidence of retaliatory intent. See King v. Rumsfeld, 328 F.3d 145, 151 n.5 (4th Cir. 2003) (temporal proximity, without more, may suffice to establish a causal connection where the two events are very close in time); Foster v. Univ. of Md.-E. Shore, 787 F.3d 243, 253 (4th Cir. 2015) (a causal connection may be established through evidence of temporal proximity combined with other evidence of retaliatory animus).

Here, the SAC alleges a tight and specific timeline: Dr. Moore asserted his discrimination claims through counsel on September 27, 2024; signed a separation agreement he was not permitted to review with counsel on October 1, 2024, which was promptly withdrawn; and MAPMG issued its adverse reports on October 10, 2024 — within roughly two weeks of the protected activity, and only after MAPMG had already accepted the benefit of the resignation it induced. SAC ¶¶ 112, 114–118, 122. That timeline alone supports an inference of causation at the pleading stage. It is reinforced by the SAC's allegation that MAPMG's chosen characterization was materially false and more damaging than necessary, SAC ¶¶ 120, 123, 136, and by the comparator evidence discussed below showing that MAPMG did not report a similarly situated physician outside Plaintiff's protected class in comparable terms notwithstanding a for-cause termination. SAC ¶¶ 104, 119, 135.

To the extent Defendants argue that statutorily mandated reporting deadlines make an inference of retaliatory intent implausible because MAPMG was legally obligated to report within

a fixed window regardless of Dr. Moore's protected activity, that argument goes to the ultimate question of but-for causation that will be tested on a full record, see Univ. of Tex. Sw. Med. Ctr. v. Nassar, 570 U.S. 338, 360 (2013) (retaliation claims require proof that the protected activity was a but-for cause of the adverse action), not to whether the SAC has plausibly alleged causation sufficient to proceed to discovery. A statutory reporting deadline explains when a report of some kind was required; it does not explain, and Defendants offer no innocent explanation for, why MAPMG chose language exceeding what a truthful report of a negotiated resignation required. Plaintiff is entitled to test that choice through discovery into MAPMG's internal deliberations, drafts, and communications concerning the October 10, 2024 reports, and ask a jury to agree that the Defendants in fact retaliated in so characterizing Dr. Moore's circumstances of separation.

**B. Defendants' Statutory Immunity Argument Is a Fact-Bound Affirmative Defense That Cannot Be Resolved on a Motion to Dismiss.**

Defendants' principal argument is that their reports are immunized under state and federal reporting statutes — including provisions such as Va. Code § 54.1-2909(F), Md. Code Ann., Health Occ. § 14-413(f), D.C. Code § 44-508(f), and the Health Care Quality Improvement Act, 42 U.S.C. § 11137(c) — and that the reports were therefore both mandatory and accurate. This argument suffers from two independent defects at the pleading stage.

First, statutory reporting immunity of this kind is ordinarily conditioned on the report having been made in good faith and without malice; it is not an unqualified shield for any report a reporting entity chooses to characterize as compelled. Whether MAPMG's reports were made in good faith — or, as the SAC alleges, were instead calculated to maximize damage to Dr. Moore's career in retaliation for his discrimination claims, SAC ¶¶ 120, 122, 136 — is a question of fact and intent that is not resolvable by resort to the statutory text alone. An affirmative defense such as immunity may be resolved on a Rule 12(b)(6) motion only where the facts establishing the

defense appear on the face of the complaint itself; where, as here, the complaint alleges facts supporting an inference of bad faith and retaliatory motive, the defense cannot be adjudicated at the pleading stage. See Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007) (*en banc*) (an affirmative defense may support Rule 12(b)(6) dismissal only if it clearly appears on the face of the complaint).

Second, Defendants' framing collapses a critical distinction that this Court has already recognized: between the underlying obligation to report a physician's alleged deviation from the standard of care and the manner in which his separation is characterized. That a report was required (which is not conceded, e.g. Lalani was not reported) does not mean any particular wording as to the circumstances of separation in that report was required or automatically protected. The SAC alleges that MAPMG, in pursuing its claimed obligation, chose to satisfy it in the most damaging manner available — reporting Dr. Moore as terminated, and the NPDB report going further still by characterizing the action as an involuntary separation grounded in substandard care — when a truthful report of the negotiated resignation MAPMG itself procured would have satisfied the same statutory obligation without the retaliatory sting. SAC ¶¶ 116–120. That is a plausible allegation of retaliatory conduct dressed in the language of compliance, and it is not defeated by the mere existence of an underlying reporting statute.

**C. The Exhibits on Which Defendants Rely Do Not Contradict — and in Material Respects Corroborate — the SAC's Allegations.**

Defendants invoke Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159 (4th Cir. 2016), for the proposition that documents attached to or relied upon in a motion to dismiss control over contrary allegations in the complaint. Goines does not assist Defendants here. Goines permits a court to credit an exhibit over a complaint's allegations only where the exhibit's actual contents flatly and irreconcilably contradict what the complaint alleges the document says — for example,

where a complaint mischaracterizes the substance of a letter that is itself attached as an exhibit. 822 F.3d at 166–67. It does not authorize a court to resolve, in the defendant's favor, disputes about why a document was worded the way it was, whether it was made in good faith, or what inferences of intent should be drawn from it.

The exhibits here do not contradict the SAC; if anything, they corroborate it. The October 10, 2024, letter to the state boards states that Dr. Moore was "terminated … in connection with concerns about quality of care being provided to patients" — precisely the characterization the SAC alleges was chosen. SAC ¶ 117. The corresponding NPDB report characterizes the separation as an involuntary action premised on substandard care, a characterization more severe than either "resigned" or the language of the state board letters — again, precisely what the SAC alleges. These documents do not establish, as a matter of undisputed fact resolvable on the pleadings, that MAPMG's characterization was accurate, necessary, or made in good faith; they are the very documents whose wording, timing, and motivation are in dispute. Crediting Defendants' characterization of their own exhibits over Plaintiff's competing, plausible interpretation of those same exhibits is precisely the kind of merits determination Goines forbids at the Rule 12(b)(6) stage.

This Court's own observations at the hearing on the first motion to dismiss are instructive. In granting Plaintiff leave to amend, the Court distinguished between conduct that predated and was released by the parties' separation agreement, and the post-Release reporting conduct now at issue in Count II, and directed Plaintiff to plead that post-separation retaliation theory — including the comparator evidence now found in ¶ 104 — with greater factual specificity. The SAC does exactly that: it adds the specific timeline of the September 27 letter, the October 1 release and its withdrawal, the October 10 reports, and the Lalani comparator, all of which were either absent or

less developed in the prior pleading. Having been invited to replead the post-Release retaliation theory with more detail, Defendants ask this Court to turn Plaintiff away for having done precisely what the Court's guidance contemplated.

**D. The Lalani Comparator Is Adequately Pled at This Stage.**

Defendants argue that Dr. Lalani is not an adequate comparator because she is not identically situated to Dr. Moore in every respect. That is not the standard at the pleading stage, nor is it the standard at any stage. Plaintiffs are not required as a matter of law to point to a similarly situated comparator to succeed on a discrimination claim. Bryant v. Aiken Reg'l Med. Ctrs., Inc., 333 F.3d 536, 545 (4th Cir. 2003). Further, a comparator need only be similarly situated in all *relevant* respects to the challenged decision; identical circumstances in every particular are not required. Mitchell v. Toledo Hosp., 964 F.2d 577, 583 (6th Cir. 1982). Relevant respects would be they "dealt with the same supervisor, [were] subject to the same standards and... engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." Mitchell, 964 F.2d at 583. That is the case here with respect to Lalani – same position, same chain of command structure as a physician in the group, same standards (supposed to be), and same conduct – each with a different result.

The SAC alleges that Dr. Lalani, like Dr. Moore, was investigated by MAPMG for patient-care-related conduct and was ultimately separated from her position — in her case, terminated outright for cause. SAC ¶ 104. Unlike Dr. Moore, she is not African American, was placed on probation rather than immediately suspended, was interviewed and given the opportunity to tell her side of events, and — critically for the retaliation claim — was never reported to any medical board or the NPDB notwithstanding a for-cause termination. Id.; SAC ¶¶ 119, 135. That MAPMG treated an admittedly for-cause termination of a physician outside Plaintiff's protected class as not

warranting any adverse report, while characterizing Dr. Moore's negotiated resignation in far more damaging terms shortly after he asserted discrimination claims, is precisely the kind of comparator evidence that supports a plausible inference of retaliatory motive at the pleading stage. Whether the comparison ultimately persuades a factfinder is a question for summary judgment or trial, not for a motion to dismiss.

## V. CONCLUSION

For the foregoing reasons, Plaintiff Andy Moore respectfully requests that this Court deny Defendants Mid-Atlantic Permanente Medical Group, P.C. and Thuy-Ann Melvin, M.D.'s Motion to Dismiss Count II of the Second Amended Complaint in its entirety.

Respectfully submitted,

ANDY MOORE

By Counsel,

*/s/ Christopher E. Brown*

Christopher E. Brown, Esq.
VSB #39852
THE BROWN FIRM PLLC
526 King St., Suite 213
Alexandria, VA 22314
Tel: 703-924-0223
Fax: 703-997-2362
cbrown@brownfirmpllc.com
*Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 21st day of August, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

_/s/ Christopher E. Brown________
Christopher E. Brown, Esq.